# Exhibit B

# Exhibit B

Electronically Filed
4/14/2023 12:20 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
RICHARD K. HY, ESQ.
Nevada Bar No. 12406
**EGLET ADAMS**
400 S. Seventh St., Suite 400
Las Vegas, NV 89101
Ph: (702) 450-5400; Fax: (702) 450-5451
E-Mail: eservice@egletlaw.com

E. MICHELLE DRAKE, ESQ.*
Minnesota Bar No. 0387366
JOHN G. ALBANESE, ESQ.*
Minnesota Bar No. 0395882
ARIANA B. KIENER, ESQ.*
Minnesota Bar No. 0402365
**BERGER MONTAGUE PC**
1229 Tyler Street NE Street, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999
Facsimile: (612) 584-4470
emdrake@bm.net
jalbanese@bm.net
akiener@bm.net
*pro hac vice forthcoming
*Attorneys for Plaintiff*

CASE NO: A-23-869000-B
Department 16

# DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| ANGEL LUIS RODRIGUEZ, JR., individually and as a representative of the class,<br><br>Plaintiff,<br>vs.<br>NATIONAL CREDIT CENTER, LLC.<br><br>Defendant. | Case No.:<br>Dept. No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>(**Exemption From Arbitration Requested**. Damages Exceed $50,000.00)<br><br>**Request For Business Court Assignment Pursuant to EDCR 1.61(a)** |

COMES NOW, the Plaintiff Angel Luis Rodriguez, Jr. ("Plaintiff"), on behalf of himself and the Class set forth below and states as follows:

**INTRODUCTION**

1. This is a class action for damages, costs, and attorneys' fees brought against the Defendant National Credit Center LLC ("Defendant" or "NCC") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA" or "Act").

2. Defendant is a consumer reporting agency that assembles and sells consumer reports primarily to auto dealers, powersports dealers, and other lenders, which use the reports to make decisions regarding consumers, i.e., prospective buyers and/or borrowers.

3. One of the types of consumer reports that Defendant sells is an "OFAC Screen," which "[s]creen[s consumers] against the Office of Foreign Assets Control list." https://www.nccdirect.com/verification-and-compliance/ (last visited Jan. 20, 2023). This list refers to the United States Department of the Treasury, Office of Foreign Assets Control's list of Specially Designated Nationals and Blocked Persons (the "OFAC-SDN List" or "List"). Defendant markets that its OFAC Screen report can be provided to its customers "While [they are] Pulling [a consumer's] Credit." *Id.*

4. In October 2022, Plaintiff applied to purchase a vehicle from Parkway Ford ("Parkway"), a car dealership located in Dover, Ohio. In connection with his application, Parkway pulled Plaintiff's credit and requested that Defendant include an OFAC Screen about Plaintiff in its report.

5. The consumer report that Defendant disseminated to Parkway was grossly inaccurate. Specifically, Defendant inaccurately reported that Plaintiff was a person (or persons) on the OFAC-SDN List.

6. Contrary to Defendant's report, Plaintiff is not on the OFAC-SDN List. Plaintiff's name, date of birth, and address are not a match to any individual on the List. However, Plaintiff has a name that is similar to the name of an individual, or individuals, on the List.

7. In reporting that Plaintiff was a match to an individual (or individuals) on the List, based only on a similarity in name, Defendant violated § 1681e(b) of the FCRA, which requires

consumer reporting agencies to "follow reasonable procedure to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of its reports, and its failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

8. As a result of Defendant's inaccurate reporting, Plaintiff was initially denied the opportunity to buy his dream car from Parkway. Defendant's inaccurate reporting caused Plaintiff serious emotional distress, reputational harm, and embarrassment.

9. On behalf of himself, and a Class of similarly situated individuals, Plaintiff brings claims pursuant to 15 U.S.C. § 1681e(b).

**JURISDICTION**

10. The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

11. The Court has personal jurisdiction over Defendant because Defendant has offices and conducts business in the County of Clark, State of Nevada, including issuing consumer reports on residents in this District and delivering them to customers in this District.

12. Defendant has an established physical presence in Nevada. Defendant has continuously maintained physical corporate offices in this District since at least 2018, and its current corporate offices are located at 7373 Peak Dr. Suite 250 Las Vegas, NV 89128.

13. Defendant is registered as a foreign limited liability company with the Nevada Secretary of State and has consented to service of process via its registered agent, located at 112 North Curry Street, Carson City, NV, 89703.

14. Defendant directs the legal and operational aspects of its business in from Nevada.

15. Defendant's operations leadership and legal leadership reside and work in this District. Specifically, both Roland Blashe (Director, Legal Department) and Marisa Noble (Director of Operations) reside and work in this District.

16. Defendant's other crucial leadership also resides and works in this district, including but not limited to Doran Patten (Chief Financial Officer), Melissa Rockoff (Vice

1  President of Human Resources), John Lucero (Vice President, Controller), and Deepti Gupta
2  (Assistant Controller).

3      17.    In addition, other witnesses and documents are located in Nevada.

4      18.    Defendant has invoked the general privileges and benefits of the laws of Nevada,
5  having stated in the Terms of Use on its website state that: "These Terms will be governed by and
6  construed in accordance with the laws of the State of Nevada, and [users of Defendant's website]
7  submit to the non-exclusive jurisdiction of the state and federal courts located in Nevada for the
8  resolution of any disputes." *See* https://www.nccdirect.com/terms-of-use/ (last visited January 30,
9  2023).

10     19.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant resides
11 in this District and a substantial part of the events giving rise to the claim occurred in the County
12 of Clark, State of Nevada.

13 **PARTIES**

14     20.    Individual and representative Plaintiff Angel Luis Rodriguez, Jr. is a resident of
15 Lorain, Ohio.

16     21.    Plaintiff is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

17     22.    Defendant National Credit Center, LLC is a Delaware limited liability company
18 with offices located at 7373 Peak Dr. Suite 250, Las Vegas, Nevada. Defendant "has been
19 providing credit, identity verification, and compliance solutions to organizations since 1996."
20 https://www.nccdirect.com/about-ncc/ (last visited Jan. 20, 2023).

21     23. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f).
22 Defendant regularly engages in the business of assembling, evaluating, and disseminating
23 information concerning consumers for the purpose of furnishing consumer reports to third parties.

24 **STATUTORY BACKGROUND**

25     24. In 1970, Congress passed the FCRA to address two related concerns. First, consumer
26 reports were playing an increasingly central role in people's lives at crucial moments, such as
27 when they applied for credit, insurance, employment, or housing. Second, despite their
28 importance, consumer reports were unregulated and had widespread errors and inaccuracies,

4

1  thereby impairing individuals' access to vehicles, housing, employment, and other critical
2  opportunities.

3     25. Recognizing that unregulated consumer reporting agencies and the inaccurate reports they were producing were harming the economy, as well as individual consumers, Congress set out to overhaul the credit reporting industry and thereby protect consumers. *See, e.g., Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 890 (D. Minn. 2019) ("The FCRA was crafted to protect consumers from the transmission of inaccurate information about them.") (internal citation omitted); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA was the product of congressional concern over abuses in the credit reporting industry."); *Pinner v. Schmidt*, 805 F.2d 1258, 1261 (5th Cir. 1986) ("The legislative history of the FCRA indicates that its purpose is to protect an individual from inaccurate or arbitrary information about himself in a consumer report that is being used as a factor in determining the individual's eligibility for credit, insurance, or employment."). As relevant here, Congress took a number of key steps to achieve this goal.

    26. <u>First</u>, the FCRA clearly defines both who and what is covered by the Act. Specifically, the FCRA's obligations, discussed further below, extend to every "consumer reporting agency," which is broadly defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

    27. Further, a "consumer report" is defined to encompass "**any written, oral, or other communication** of any [consumer] information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected **in whole or in part** for the purpose of serving as **a factor** in establishing the consumer's eligibility for [] credit or insurance to be used primarily for personal, family, or household purposes…" 15 U.S.C. § 1681a(d) (emphasis added).

5

28. <u>Second</u>, to ensure the accuracy of consumer reports, the FCRA sets a high bar for persons that meet the definition of a "consumer reporting agency"—which, given their "vital role" in preparing consumer reports, have "grave responsibilities" to consumers. *See* 15 U.S.C.A. § 1681(a)(3-4). Specifically, "[w]henever a consumer reporting agency prepares a consumer report," it is required "to follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added).

29. As described below, Defendant wholly disregarded its duties under the Act with respect to Plaintiff and members of the proposed Class.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

30. Plaintiff has long dreamed of purchasing a Ford Mustang Shelby GT500, a car that is routinely described as "rare" and "in short supply." *See* https://www.foxnews.com/auto/ford-mustang-shelby-gt500-muscle-car-auctioned-hurricane-ian-relief (last visited Jan. 17, 2023).

31. After saving up for a down payment for approximately two years, in the fall of 2022, Plaintiff finally had a down payment ready to buy his dream car. And, after months of searching nearby dealerships—which typically were each allocated only one Ford Mustang Shelby GT500, which would be listed $10,000 to $20,000 over sticker price and always sell quickly—Plaintiff also finally found a dealership, Parkway, where his dream car was available, and, better yet, was listed at a lower price than Plaintiff had seen elsewhere.

32. At long last, in October 2022, Plaintiff applied to purchase a 2022 Ford Mustang Shelby GT500 from Parkway.

33. As part of this process, a representative of Parkway requested a consumer report from Defendant to be used in whole or in part for the purpose of serving as a factor in establishing Plaintiff's eligibility for credit.

34. Specifically, on or around October 22, 2022, Parkway ordered a consumer report regarding Plaintiff from a company called RouteOne LLC ("RouteOne"). RouteOne is a Michigan-based seller of consumer credit and other information for consumer reports, and RouteOne sells information it obtains from Defendant. Parkway paid a fee for the consumer report about Plaintiff,



and Defendant was paid for the information it provided about Plaintiff.

35. Defendant, through RouteOne, provided Parkway with a consumer report indicating that Plaintiff was a match to an individual on the OFAC-SDN List.

36. Defendant was aware that RouteOne would be providing this OFAC information alongside Plaintiff's traditional credit information (such as credit scores and tradelines from lenders) and was aware that Parkway would use the OFAC information to determine whether Plaintiff was eligible to buy a vehicle and receive dealer financing.

37. After Defendant disseminated the consumer report about Plaintiff to Parkway, a representative at Parkway called Plaintiff and informed him that the dealership could not go forward with the sale because the consumer report included a record indicating that Plaintiff was a match to the OFAC–SDN List.

38. Individuals and businesses in the United States are generally prohibited from conducting business with anyone on the OFAC–SDN List. *See*, *e.g.*, 31 C.F.R. § 536.201.

39. The List is publicly available through the United States Department of the Treasury, Office of Foreign Assets Control website, https://sanctionssearch.ofac.treas.gov/. The OFAC–SDN List is searchable online and is also downloadable in both PDF and TEXT format.

40. Plaintiff is not, and never has been, on the OFAC–SDN List.

41. A search of only Plaintiff's first and last name on the publicly available OFAC–SDN List yields results for two individuals: (1) "Miguel Angel Rodriguez Orejuela," with a date of birth of either November 3, 1943 or July 15, 1943, and an address in Cali, Columbia; and (2) "Miguel Angel Belloso Rodriguez" (with an alias of Miguel Angel Bellozo Rodriguez), with a date of birth of March 25, 1970 and an address in Guadalajara, Mexico.

42. Both of these individuals are known drug-traffickers. *See* https://www.dea.gov/sites/default/files/divisions/nyc/2007/nyc051107p.html (last visited Jan. 17, 2023); *see also* https://home.treasury.gov/system/files/126/20110911_vasquez_hernandez.pdf (last visited Jan. 17, 2023).

. . .

43. Plaintiff's full name is Angel Luis Rodriguez, Jr. The names of the two above individuals are entirely different from those of Plaintiff.

44. The date of birth of each of the above individuals also differs greatly from the date of birth of Plaintiff.

45. Plaintiff has never lived in Cali, Columbia or Guadalajara, Mexico.

46. Finally, Plaintiff is not, and has never been, a drug-trafficker.

47. Defendant should have known that Plaintiff is not Miguel Angel Rodriguez Orejuela and/or Miguel Angel Belloso Rodriguez. In addition to the obvious name-match error, a review of the OFAC/SDN List records and Plaintiff's information would have revealed that the date of birth and address of these individuals are also not a match to Plaintiff. Further, it is absurd to believe that either of the individuals on the OFAC/SDN List, both of whom are known drug-traffickers, would be attempting to purchase a Ford Mustang Shelby GT500 in their real names from a Ford dealership in Dover, Ohio.

48. As expected, Parkway used Defendant's consumer report on Plaintiff in whole or in part as a factor in determining Plaintiff's eligibility for credit. After receiving Defendant's grossly inaccurate report identifying Plaintiff as a match to the OFAC-SDN List, Parkway denied Plaintiff the opportunity to purchase or finance the 2022 Ford Mustang Shelby GT500.

49. Plaintiff begged Parkway to believe that Defendant's report had been inaccurate. Ultimately, Plaintiff was able to convince Parkway that he was not on the OFAC–SDN List. Fortunately, Parkway was willing to disregard Defendant's inaccurate reporting and sell Plaintiff the vehicle.

50. However, for at least a 24-hour period, Plaintiff was not cleared to purchase his dream car. During this time period, Plaintiff was devastated. He was alarmed and embarrassed that Parkway thought he was on the OFAC–SDN List. Moreover, he was terrified that, after spending years saving up for his dream car, and months searching for a dealership where a rare and relatively reasonably priced 2022 Ford Mustang Shelby GT500 was available, he would lose the opportunity to buy his dream car due only to Defendant's inaccurate reporting.

51. Understandably, Plaintiff was distressed over having been reported as a match to the OFAC-SDN List, and determined to identify the source of this inaccurate match, as well as any other recipients of the derogatory reporting, in addition to Parkway.

52. On January 30, 2023, Plaintiff sent a letter via Certified U.S. Mail to Defendant, which Defendant received on February 6, 2023. Plaintiff's letter requested that Defendant provide all information in his consumer file, the contents of which would enable Plaintiff to ascertain, for example, any other third parties to which Defendant had reported that Plaintiff was a drug-trafficker.

53. As of the time of this filing, Plaintiff has yet to receive a response from Defendant.

54. Given Defendant's refusal to provide Plaintiff with a copy of his consumer file, Plaintiff is unaware of the identities of any other persons or companies to whom, in addition to Parkway, Defendant disseminated the inaccurate information identifying Plaintiff as a match to the List. Plaintiff fears that Defendant's inaccurate reporting could occur in the future, that the inaccurate reporting has already been issued to other entities, and that other entities might report the same inaccurate information.

**FACTS DEMONSTRATING THAT DEFENDANT WILLFULLY FAILED TO USE REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY OF ITS CONSUMER REPORTS AND TO PROVIDE CONSUMER FILE DISCLOSURES**

55. If Defendant had reasonable procedures to assure maximum possible accuracy, it would have determined that the information in Plaintiff's consumer report belonged to another individual or other individuals.

56. But instead, Defendant erroneously matched Plaintiff with an individual or individuals on the OFAC-SDN List with a different name, date of birth, and address.

57. Defendant could have and should have checked the OFAC–SDN List, which is readily available online, prior to issuing its report. If it had done so, it would have discovered that a search for Plaintiff's *full* name, Angel Luis Rodriguez, Jr., returns no results, and that a search of *only* Plaintiff's first and last names, Angel Rodriguez, returns results that clearly are not

Plaintiff. Defendant also would have discovered that the individuals on the OFAC-SDN List to whom Defendant matched Plaintiff had different dates of birth than Plaintiff.

58. The dangers of erroneous matching of persons with suspected terrorists and drug-traffickers on the OFAC–SDN List is well-recognized in the credit reporting industry. In 2017, a jury awarded $60 million to a class of persons who had been mismatched to the OFAC-SDN List by Trans Union. *Ramirez v. Trans Union, LLC*, 3:12-cv-632 (N.D. Cal.). And over a decade ago, the Third Circuit Court of Appeals upheld a jury verdict for mismatching an individual to the OFAC-SDN List. *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010).

59. It is well-recognized that failing to require actual name matches, and/or using name-only matching, is inconsistent with reasonable procedures to ensure maximum possible accuracy. *In re Gen. Info. Servs., Inc.*, No. 2015-CFPB-0028, Consent Order ¶¶ 10-12 (C.F.P.B. Oct. 29, 2015), available at https://files.consumerfinance.gov/f/documents/cfpb_name-only-matching_advisory-opinion_2021-11.pdf; *see generally* C.F.P.B. Advisory Opinion on Name-Only Matching (Nov. 4, 2021), available at https://files.consumerfinance.gov/f/documents/cfpb_name-only-matching_advisory-opinion_2021-11.pdf ("[A] consumer reporting agency that uses inadequate matching procedures to match information to consumers, including name-only matching (*i.e.*, matching information to the particular consumer who is the subject of a consumer report based solely on whether the consumer's first and last names are identical or similar to the names associated with the information), in preparing consumer reports is not using reasonable procedures to assure maximum possible accuracy under section 607(b) of the Fair Credit Reporting Act (FCRA).").

60. In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

   a. Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

   b. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the FCRA;

10

  c. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

  d. Defendant knew that matching individuals using name-only or a common name match would result in false positives. However, it persisted in doing so;

  e. If Defendant had reviewed its own report or consulted with the publicly available database, it would have been obvious that Plaintiff was not a match to any individual on the OFAC-SDN List;

  f. Defendant's violations of the FCRA were repeated and systematic; and

  g. Defendant's conduct caused damages in excess of fifteen thousand dollars ($15,000.00).

61. At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that other consumer reporting agencies have been subject to court decisions and consumer complaints critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports than in producing accurate reports.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings his claims on behalf of himself individually, and, pursuant to Rule 23 of the Nevada Rules of Civil Procedure, on behalf the following Class, defined as:

> All individuals who were the subjects of consumer reports furnished by Defendant which contained information indicating such individuals were possible matches to individuals on the OFAC-SDN List where date of birth or address of the subject of the report do not match date of birth or address in the government database and where the report was issued in the five years predating the filing of this Complaint and continuing through the date the class list is prepared.

63. The Class satisfies the requirements of Rule 23(c)(3) of the Nevada Rules of Civil Procedure.

64. <u>Numerosity:</u> The Class is so numerous that joinder of all class members is impracticable. Given the volume of Defendant's business, there are hundreds or thousands of class

11

members.

65. <u>Commonality</u>: This case presents common questions of law and fact, including but not limited to:

    a)      Whether Defendant violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information contained in consumers' reports with respect to the OFAC–SDN List;

    b)      Whether Defendant's violations of the FCRA were willful; and

    c)      The proper measure of damages.

66. <u>Typicality:</u> Plaintiff's claims are typical of the members of the Class. It is typical for Defendant to match consumers to the OFAC-SDN List using only a name or common name. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

67. <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Class.

68. Class certification is appropriate under Rule 23(c)(3) of the Nevada Rules of Civil Procedure because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

69. In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

70. Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

71. Plaintiff intends to send notice to all members of the Class to the extent required by Rule 23(d)(2). The names and addresses of class members are available from Defendant's records.

## COUNT I

**15 U.S.C. § 1681e(b)**
**On behalf of Plaintiff individually**
**and on behalf of the Class**

72. Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

73. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and members of the Class. For example, Defendant misidentified Plaintiff as an individual or individuals on the OFAC-SDN List based solely on a name-only match, without verifying other data points, or consulting with publicly available online records.

74. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681e(b).

75. As a result of Defendant's conduct, Plaintiff and class members suffered actual damages in excess of fifteen thousand dollars ($15,000.00), including but not limited to: denial of goods and/or credit, damage to reputation, embarrassment, humiliation, and other mental and

emotional distress.

76. Plaintiff and members of the Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, seek the following relief:

a. Determining that this action may proceed as a class action under Rule 23(c)(3) of the Nevada Rules of Civil Procedure;

b. Designating Plaintiff as the class representatives for the Class;

c. Designating Plaintiff's Counsel as counsel for the Class;

d. Issuing proper notice to the Class at Defendant's expense;

e. Declaring that Defendant committed multiple, separate violations of the FCRA;

f. Declaring that Defendant acted negligently, willfully, and in deliberate or reckless disregard of the rights of Plaintiff and the Class under the FCRA;

g. Awarding actual and/or statutory damages as provided by the FCRA, in excess of fifteen thousand dollars ($15,000.00);

h. Awarding punitive damages, in excess of fifteen thousand dollars ($15,000.00);

i. Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA;

. . .

. . .

. . .

. . .

j.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

DATED April 14th, 2023

**EGLET ADAMS**

ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
RICHARD K. HY, ESQ.
Nevada Bar No. 12406
400 S. Seventh St., Suite 400
Las Vegas, NV 89101

E. MICHELLE DRAKE, ESQ.*
Minnesota Bar No. 0387366
JOHN G. ALBANESE, ESQ.*
Minnesota Bar No. 0395882
ARIANA B. KIENER, ESQ.*
Minnesota Bar No. 0402365
**BERGER MONTAGUE PC**
1229 Tyler Street NE Street, Suite 205
Minneapolis, MN 55413
*pro hac vice* forthcoming
*Attorneys for Plaintiff*